**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

---

|  |  |
|---|---|
| STATE OF NORTH DAKOTA by and through the NORTH DAKOTA DEPARTMENT OF ENVIRONMENTAL QUALITY, | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) No. 1:24-cv-00256-DMT-CRH ) |
| UNITED STATES DEPARTMENT OF LABOR, *et al.* | ) ) ) ) |
| *Defendants*. | |

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.      Statutory and Regulatory Background ............................................................... 2

II.     OSHA's Investigation and Enforcement of the SDWA Against the State Agency ............ 4

III.    North Dakota's Complaint in this Case ............................................................. 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

I.      Article III Precludes North Dakota From Challenging the OSHA Investigation That Ended in August 2023 ................................................................................. 6

II.     North Dakota is Not Immune from the Ongoing Administrative Proceeding in which OSHA is a Prosecuting Party, Nor Was It Immune from OSHA's Investigation. ............. 8

        A.      Because OSHA is a Prosecuting Party, the State Agency is not Immune from the Ongoing Administrative Proceeding before the ALJ ............................................. 8

        B.      North Dakota has no Immunity from OSHA Investigations. ............................... 12

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Alden v. Maine*,
   527 U.S. 706 (1999) ......................................................................................... 8, 9

*California v. Texas*,
   593 U.S. 659 (2021) ............................................................................................ 7

*Connecticut Dept. of Env't Prot. v. OSHA*,
   138 F. Supp. 2d 285 (D. Conn. 2001) ............................................................... 11

*Connecticut Dept. of Env't Prot. v. OSHA*,
   356 F.3d 226 (2d. Cir. 2004) ................................................................... 9, 10, 13

*Exxon Mobil Corp. v. Healey*,
   28 F.4th 383 (2d Cir. 2022) ................................................................................ 7

*Fed. Mar. Comm'n v. S.C. State Ports Auth.*,
   535 U.S. 743 (2002) ................................................................................... *passim*

*Florida v. United States*,
   133 F. Supp. 2d 1280 (N.D. Fla. 2001) ..................................................... 9, 11, 14

*Green v. Mansour*,
   47 U.S. 64 (1985) ............................................................................................ 7, 8

*HRI, Inc. v. E.P.A.*,
   198 F.3d 1224 (10th Cir. 2000) .......................................................................... 2

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................................ 6

*Marshall Cnty. Health Care Auth. v. Shalala*,
   988 F.2d 1221 (D.C. Cir. 1993) .......................................................................... 4

*McNaught v. Nolen*,
   76 F.4th 764 (8th Cir. 2023) ............................................................................... 7

*Mille Lacs Band of Chippewa Indians v. Minnesota*,
   124 F.3d 904 (8th Cir. 1997) .................................................................... 9, 10, 11

*Nat. Res. Def. Council, Inc. v. E.P.A.*,
   812 F.2d 721 (D.C. Cir. 1987) ............................................................................ 2

*Nat'l Right to Life Pol. Action Comm. v. Connor*,
   323 F.3d 684 (8th Cir. 2003) .............................................................................. 6

*Neitzke v. Williams*,

490 U.S. 319 (1989) ................................................................................................... 6

*Potter v. Nw. Mortgage, Inc.*,
  329 F.3d 608 ................................................................................................... 7, 8

*R.I. Dep't of Envt'l Mgmt. v. United States*,
  304 F.3d 31 (1st Cir. 2002) ................................................................... *passim*

*Renne v. Geary*,
  501 U.S. 312 (1991) ....................................................................................... 6

*R.I. Dep't of Envt'l Mgmt. v. United States*,
  115 F. Supp. 2d 269 (D.R.I. 2000) ............................................................ 11

*Seneca Nation of Indians v. New York*,
  178 F.3d 95 (2d Cir.1999) ........................................................................... 10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ....................................................................................... 7

*State of Ohio EPA v. U.S. Dep't of Labor*,
  121 F. Supp. 2d 1155 (S.D. Ohio 2000) ............................................ 9, 11, 14

*United States v. Carter*,
  995 F.3d 1222 (10th Cir. 2021) ................................................................... 7

*Viewpoint Neutrality Now! v. Regents of Univ. of Minnesota*,
  516 F. Supp. 3d 904 (D. Minn. 2021) ......................................................... 6

*Young Am.'s Found. v. Kaler*,
  14 F.4th 879 (8th Cir. 2021) ....................................................................... 7

**Statutes**

33 U.S.C. § 1367 ........................................................................................................ 3

42 U.S.C. § 300f ........................................................................................................ 3

42 U.S.C. § 300h ........................................................................................................ 2

42 U.S.C. § 300j-9 ..................................................................................... 1, 3, 12, 15

42 U.S.C. § 6971 ................................................................................................ 3, 10

42 U.S.C. § 7622 ........................................................................................................ 3

1974 U.S.C.C.A.N. 6454
  1974 WL 11641 (Aug. 15, 1974) .............................................................. 2

**Rules**

Fed. R. Civ. P. 25 ............................................................................................ 1

Federal Rule of Civil Procedure 12 ....................................................... *passim*

**Regulations**

29 C.F.R 24.108 ............................................................................................. 5

29 C.F.R. 24.106 ....................................................................................... 3, 12

29 C.F.R. 24.112 ......................................................................................... 3, 4

29 C.F.R. § 24.103 ......................................................................................... 15

29 C.F.R. § 24.104 ........................................................................................ 12

29 C.F.R. § 24.105 ..................................................................................... 3, 12

85 Fed. Reg. 13,186-01, 2020 WL 1065013 (Mar. 6, 2020) ........................ 3

85 Fed. Reg. 58,393 (Sept. 18, 2020) ..................................................... 3, 12

## INTRODUCTION

The Department of Labor's ("Department") Occupational Safety and Health Administration ("OSHA") investigated Joshua Seerup's allegations that his employer, the North Dakota Department of Environmental Quality ("the state agency"), retaliated against him for raising concerns with the Environmental Protection Agency about public water systems. OSHA determined that it had reasonable cause to believe that the state agency violated the whistleblower provision of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300j-9(i). Then it intervened as a prosecuting party in a proceeding that Mr. Seerup had initiated before a Department Administrative Law Judge ("ALJ") adjudicating whether the state agency violated the SDWA.

The State of North Dakota then brought this action seeking an immediate termination of the administrative proceedings. North Dakota claims that the Eleventh Amendment and state sovereign immunity bar the Federal Defendants[1] from accepting or investigating Mr. Seerup's complaint (which North Dakota refers to as "the Seerup OSHA Case") or prosecuting or adjudicating the state agency's alleged violations of the SDWA (which North Dakota refers to as "the Seerup OALJ Case"). The state contends that it is entitled to declaratory relief, as well a preliminary and permanent injunction ordering the Federal Defendants to "cease and desist" any "further prosecution or adjudication" of the "OSHA Case" and the "OALJ Case." It also seeks to enjoin Mr. Seerup from filing any further complaints with OSHA against the state agency. North Dakota's claims are unavailing and should be dismissed in their entirety.

---

[1] In addition to naming Mr. Seerup as a Defendant, North Dakota names the following Federal Defendants: the United States Department of Labor; the Occupational Safety and Health Administration of the United States Department of Labor; the Secretary of Labor; the Assistant Secretary of the Occupational Safety and Health Administration; the Regional Administrator for Region VIII of the Occupational Safety and Health Administration, Jennifer S. Rous; and the Administrative Law Judge assigned to the underlying administrative proceeding, Christopher Larsen. Compl. ¶¶ 3-9, ECF No. 1. Lori Chavez-DeRemer was confirmed by the Senate as the Secretary of Labor following North Dakota's initiation of this action. Amanda Wood Laihow is the Acting Assistant Secretary for the Occupational Safety and Health Administration. These official capacity Defendants have been automatically substituted for their predecessors. Fed. R. Civ. P. 25(d).

State sovereign immunity bars some judicial or administrative adjudications against states by *private* parties.[2]  Sovereign immunity does not limit the ability of the United States to prosecute an enforcement action against a state under a federal statute, either in court or through a federal administrative proceeding, nor does it limit the ability of the United States to investigate a state's compliance with federal law, whether on its own initiative or in response to a complaint.  Every case to address these issues—and every case North Dakota cites in support of its complaint—has rejected the idea that OSHA is barred from prosecuting a state for a violation of a federal whistleblower statute in a proceeding before an ALJ.  And those cases also reject the notion that sovereign immunity precludes OSHA from investigating a state's alleged violations of the statute in the first instance.  North Dakota thus has no immunity from the underlying administrative proceeding in which OSHA is a prosecuting party.  Nor did North Dakota have any immunity from OSHA's investigation into the state agency—any challenge to which this Court lacks jurisdiction to consider in any event, as OSHA has long since concluded the investigation.  This Court should accordingly dismiss North Dakota's complaint in its entirety.

## BACKGROUND

### I.    Statutory and Regulatory Background

Congress enacted the SDWA "to assure that water supply systems serving the public meet minimum national standards for protection of public health."  H.R. Rep. 93-1185 at 1, *reprinted in* 1974 U.S.C.C.A.N. 6454, 1974 WL 11641 (Aug. 15, 1974); *see also Nat. Res. Def. Council, Inc. v. E.P.A.*, 812 F.2d 721, 723 (D.C. Cir. 1987).  The SDWA directs the EPA to establish "overall minimum drinking water protection standards for the nation," and it delegates to states specific areas of "regulation and enforcement."  *HRI, Inc. v. E.P.A.,* 198 F.3d 1224, 1232 (10th Cir. 2000), as amended on denial of reh'g and reh'g en banc (Mar. 30, 2000) (citing 42 U.S.C. § 300h).  The SDWA, like several other federal statutes for the protection of human health and the

---

[2] By its terms, the Eleventh Amendment constrains only the exercise of the federal judicial power.  U.S. Const., Amdt. 11.  But the principles of sovereign immunity reflected in the Eleventh Amendment also apply to adjudication by private parties against states before administrative agencies.  *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 754, 760 (2002).

environment, also includes a whistleblower provision.  This provision works in conjunction with the Act's drinking water standards and other enforcement mechanisms by prohibiting employers—including state employers—from discriminating against employees who, among other protected activities, have "assisted or participated . . . in any . . . action to carry out the purposes of [the SDWA]." 42 U.S.C. 300j-9(i)(1)(C), 300f(12); *see also, e.g.*, Clean Air Act, 42 U.S.C. § 7622(a); Clean Water Act, 33 U.S.C. § 1367(a); Solid Waste Disposal Act, 42 U.S.C. § 6971(a).

Under the SDWA, an employee who believes that any person—defined to include a state, 42 U.S.C. § 300f(12)—has retaliated against that employee in violation of the Act's whistleblower provision may file a complaint with the Secretary of Labor.  *See* 42 U.S.C. §§ 300j-9(i)(2)(A); *see also, e.g.*, 42 U.S.C. § 7622(b)(1), 33 U.S.C. § 1367(b), 42 U.S.C. § 6971(b) (setting forth similar enforcement schemes under the Clean Air Act, Clean Water Act, and Solid Waste Disposal Act).  The Secretary has delegated to OSHA responsibility for receiving and investigating complaints under the SDWA whistleblower provisions.  *See* Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for Occupational Safety and Health, 85 Fed. Reg. 58,393 (Sept. 18, 2020).  Following investigation of a complaint, OSHA issues a determination dismissing the complaint or finding retaliation and ordering appropriate relief.  29 C.F.R. § 24.105(a).

Either the respondent-employer or the complainant-employee may object to OSHA's findings and order within 30 days and request a hearing *de novo* before a Department ALJ.  *See* 29 C.F.R. 24.106(a).  The complainant and the respondent are parties in every ALJ proceeding; at its discretion, OSHA may also participate in the proceeding at any time.  *See* 29 C.F.R. 24.108(a).[3]

---

[3] The ALJ's decision is subject to discretionary review by the Department of Labor's Administrative Review Board ("ARB").  *See* 29 C.F.R. 24.110.  The ARB's decision, in turn, is subject to discretionary review by the Secretary.  *See* Secretary of Labor's Order No. 01-2020 (Feb. 21, 2020), 85 Fed. Reg. 13,186-01, 2020 WL 1065013 (Mar. 6, 2020).  If either party is unsatisfied with the Department's final decision, the party may seek judicial review in the United States Court of Appeals for the circuit in which the violation allegedly occurred.  *See* 42 U.S.C. § 300j-9(i)(3)(A); 29 C.F.R. 24.112(a).

II.    **OSHA's Investigation and Enforcement of the SDWA Against the State Agency**

OSHA received Mr. Seerup's whistleblower complaint on July 4, 2022.  The complaint alleged that the state agency—the North Dakota Department of Environmental Quality—retaliated against him for expressing concerns to a state coordinator of the Environmental Protection Agency regarding the safety of public water systems and the state agency's enforcement of the SDWA. *See* Fed. Defs.' Ex. 1, Letter from Jennifer Rous, Regional Administrator, OSHA Region VIII, to North Dakota Department of Environmental Quality c/o Courtney Titus, Esq, Aug. 14, 2023, p. 1. OSHA investigated the complaint and issued a written determination on August 14, 2023.  *See id.*[4] OSHA found reasonable cause to believe that the state agency violated the SDWA, and it ordered the state agency to take steps to remedy the violation, including rescinding the discipline it had issued to Mr. Seerup and posting a notice for the state agency's employees informing them of their rights under the SDWA whistleblower provision.  *See id.* at 1-2, 5.  On September 13, 2023, the state agency timely filed an objection to OSHA's determination with the Department of Labor's Office of Administrative Law Judges.  *See* Compl. ¶ 29.[5]  The case was docketed on September 19, 2023, and was assigned to ALJ Christopher Larsen ("the ALJ").  *See* Fed. Defs.' Ex. 2, Notice of Docketing; Fed. Defs' Ex. 3, Notice of Hearing and Pre-Hearing Order.  On September 25,

---

[4] All the exhibits that are attached to this motion are documents that are referenced in the State of North Dakota's complaint, *see* Fed Defs. Ex. 1, Letter from Jennifer Rous, Regional Administrator, OSHA Region VIII, to North Dakota Department of Environmental Quality c/o Courtney Titus, Esq, Aug. 14, 2023; documents that are referenced in the complaint and part of the record in the administrative proceedings before the ALJ, *see* Fed. Defs. Ex. 2, Notice of Docketing, Fed. Defs. Ex. 3, Notice of Hearing and Pre-Hearing Order, Fed. Defs. Ex. 4, Notice of Election of Party Status and Notice of Appearance, and Fed. Defs. Ex. 5, Order Continuing Hearing; or documents that are part of the record in the administrative proceedings but postdate North Dakota's complaint, *see* Fed. Defs.' Ex. 6, Respondent's Motion to Stay, Fed. Defs. Ex. 7, Order Vacating Hearing and Imposing Stay.  In any event, given that the state's civil action is, in essence, "interlocutory review" of an administrative proceeding, *see R.I. Dep't of Envt'l Mgmt. v. United States*, 304 F.3d 31, 44-45 (1st Cir. 2002); "the district court can consult the [administrative] record to answer [a] legal question before the court" raised in a motion under Rule 12(b)(6), *see Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

[5] In objecting to OSHA's findings, the state agency asserted that it is a government agency of the State of North Dakota, which has not waived its sovereign immunity.  *See* Fed. Defs.' Ex. 2, at 1 n.1.

2023, OSHA entered the case as a party pursuant to 29 C.F.R 24.108(a).  *See* Fed. Defs.' Ex. 4, Notice of Election of Party Status and Notice of Appearance.  A hearing was scheduled to take place before the ALJ on February 28, 2025, but has been continued pending this litigation.  *See* Fed. Defs.' Ex. 3, Notice of Hearing and Pre-Hearing Order; Fed. Defs.' Ex. 5, Order Continuing Hearing; Fed. Defs.' Ex. 7, Order Vacating Hearing and Imposing Stay.

### III.    North Dakota's Complaint in this Case

On December 19, 2024, before the ALJ's hearing, North Dakota filed its complaint with this court.  North Dakota contends that sovereign immunity bars enforcement of the SDWA's whistleblower protections against the state agency because it has sovereign immunity from "any suit brought by a private citizen pursuant to the employee protection provisions of the SDWA." Compl. ¶¶ 35, 37.  And it asserts that the Federal Defendants have "violated, and continue to violate, the [state agency's] sovereign immunity" by "permitting [Mr. Seerup] to bring the Seerup OSHA Case and the resulting Seerup OALJ Case," "refusing to dismiss [Mr. Seerup's] OSHA Case," and "providing an investigative and adjudicatory forum" for Mr. Seerup's claims. *Id.* ¶¶ 41-42; *see also id.* ¶ 45 ("The initiation and investigation of the Seerup OSHA Case and adjudication of the Seerup OALJ Case constitute separate and continuing violations of the State's sovereign immunity[.]").  North Dakota contends that it is entitled to a declaration that "in allowing the filing and pursuit of the Seerup OSHA Case, and requiring the [state agency] to adjudicate the Seerup OALJ Case," the Defendants violate its sovereign immunity, as well as an injunction ordering the Defendants to "cease and desist any further prosecution or adjudication of [Mr. Seerup's] OSHA Case" and his "OALJ Case." *Id.* ¶¶ 43, 48.  On December 20, 2024, the state agency filed a motion to stay the administrative proceedings pending the outcome of this litigation, *see* Fed. Defs.' Ex. 6, Respondent's Motion to Stay, which the ALJ granted on January 17, 2025.  *See* Fed. Defs.' Ex. 7, Order Vacating Hearing and Imposing Stay.

## LEGAL STANDARD

Federal Defendants move to dismiss North Dakota's claims challenging OSHA's now-concluded investigation for a lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. To withstand a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court possesses subject matter jurisdiction over its claim. See *Herden v. United States*, 726. F.3d 1042, 1046 (8th Cir. 2013) (en banc). Courts must keep in mind that "[f]ederal courts are of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record," *Nat'l Right to Life Pol. Action Comm. v. Connor*, 323 F.3d 684, 689 (8th Cir. 2003) (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)).

Federal Defendants move to dismiss North Dakota's claims challenging the ongoing proceeding before the ALJ, and, as an alternative to their jurisdictional argument, the claims challenging OSHA's investigation, for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Thus, under Rule 12(b)(6), "a claim may be dismissed if it is 'based on an unavailing' legal theory." *Viewpoint Neutrality Now! v. Regents of Univ. of Minn.*, 516 F. Supp. 3d 904, 915-16 (D. Minn. 2021) (quoting *Neitzke*, 490 U.S. at 327).

## ARGUMENT

I.   **Article III Precludes North Dakota From Challenging the OSHA Investigation That Ended in August 2023.**

The Court lacks subject matter jurisdiction to consider North Dakota's claims for prospective relief regarding OSHA's already-concluded investigation. Whether as a matter of standing or mootness, this claim for prospective relief should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because OSHA concluded the investigation in August 2023—well before North Dakota instituted this action.

"The Constitution gives federal courts the power to adjudicate only genuine 'Cases' and

'Controversies.'" *California v. Texas*, 593 U.S. 659, 668 (2021) (quoting Art. III, § 2). This jurisdictional limitation underpins both standing and mootness jurisprudence. "To establish standing to sue in federal court, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *McNaught v. Nolen*, 76 F.4th 764, 768-69 (8th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[S]tanding is assessed 'at the time the action commences.'" *Id*. at 769 (citation omitted). "The related mootness doctrine asks whether 'during the course of the litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief.'" *Id*. (quoting *Young Am.'s Found. v. Kaler*, 14 F.4th 879, 886 (8th Cir. 2021)). Because of these timing differences between standing and mootness, an Article III case or controversy "problem 'may sound like one of mootness—a justiciable controversy existed but no longer remains—but the timing makes [it] one of standing.'" *Id*. (citation omitted).

OSHA received Mr. Seerup's complaint in July 2022 and concluded its investigation in August 2023. North Dakota cannot show that the relief it seeks with respect to OSHA's long-concluded investigation—a declaration from this Court that this investigation was unlawful or an injunction ordering OSHA to "cease and desist" that investigation—would redress any injury that it may have suffered. Compl. ¶¶ 42, 48. Therefore, there is no "actual, ongoing case[] or controvers[y]" involving OSHA's investigation, whether viewed through the lens of standing or mootness. *See Potter v. Nw. Mortgage, Inc.*, 329 F.3d 608, 611 (8th Cr. 2003). *See also, e.g.*, *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) (holding that a suit seeking declaratory and injunctive relief for state attorney general's investigation was rendered moot when investigation concluded); *United States v. Carter*, 995 F.3d 1222, 1232 (10th Cir. 2021) (holding that a challenge to court-ordered investigation was moot when investigation was completed). As the Second Circuit explained in *Exxon Mobil v. Healey*, "a request for a declaratory judgment as to a[n alleged] past violation cannot itself establish a case or controversy[.]" 28 F.4th at 394-95 (citing *Green v. Mansour*, 47 U.S. 64, 73-74 (1985)). And a "Court cannot enjoin what no longer

exists." *Id*. at 393.  Because there is no "actual, ongoing case[] or controvers[y]" involving OSHA's investigation, *Potter*, 329 F.3d at 611, this Court should dismiss North Dakota's claims challenging that investigation under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

## II.    North Dakota is Not Immune from the Ongoing Administrative Proceeding in which OSHA is a Prosecuting Party, Nor Was It Immune from OSHA's Investigation.

North Dakota's sovereign immunity has not been infringed in this case.  The Federal Defendants agree that as a general matter sovereign immunity constrains the ability of a "*private* citizen" to litigate a claim against a state, including in a "federal administrative" forum such as before a Department ALJ, provided the state has not waived its immunity and Congress has not abrogated the state's sovereign immunity.  Compl. ¶¶ 29, 37 (emphasis added); *see Fed. Mar. Comm'n v. S.C. State Ports Auth.* ("*Ports*"), 535 U.S. 743, 757-69 (2002) (holding that state sovereign immunity precluded agency from adjudicating private party's complaint against state); *Alden v. Maine,* 527 U.S. 706, 755-56 (1999) (addressing limits on state sovereign immunity). OSHA, however, is not a private party.  And it is well established that state sovereign immunity does not bar the federal government from either litigating against or investigating a state.  North Dakota's assertion that sovereign immunity bars the ALJ proceeding against the state agency, in which OSHA is a prosecuting party, is thus without merit.  So too is North Dakota's contention that sovereign immunity barred OSHA's investigation—a claim which, as explained above, this Court lacks jurisdiction to consider in any event, since the investigation has long since concluded. Sovereign immunity does not constrain any of the actions taken by OSHA in this case, and OSHA's involvement renders unavailing all of North Dakota's claims.

### A. Because OSHA is a Prosecuting Party, the State Agency is not Immune from the Ongoing Administrative Proceeding before the ALJ.

North Dakota's contention that its state agency has sovereign immunity from the Seerup OALJ case is incorrect because OSHA is a prosecuting party in the case.  *See* Compl. ¶¶ 42-43, 45.  When OSHA is a prosecuting party in an administrative proceeding before an ALJ, the state

has no immunity from the proceeding. *Conn. Dept. of Env't Prot. ("CDEP") v. OSHA*, 356 F.3d 226, 234 (2d. Cir. 2004) (citing *Ports*, 535 U.S. at 768); *R.I. Dept. of Env't Mgmt. ("RIDEM") v. United States*, 304 F.3d 31, 53-54 (1st Cir. 2002) (citing, *inter alia*, *Mille Lacs Band of Chippewa Indians v. Minnesota,* 124 F.3d 904, 913 (8th Cir. 1997), *aff'd sub nom. Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999)); *State of Ohio EPA v. U.S. Dep't of Labor*, 121 F. Supp. 2d 1155, 1168 (S.D. Ohio 2000); *Florida v. United States*, 133 F. Supp. 2d 1280, 1291-92 (N.D. Fla. 2001).

The federal government, acting through one of its Executive Branch agencies, may prosecute an action against a state, either in court or before an administrative tribunal, without implicating sovereign immunity. "States, in ratifying the Constitution, did surrender a portion of their inherent immunity by consenting to suits brought by . . . the Federal Government." *Ports*, 535 U.S. at 752 (citing *Alden*, 527 U.S. at 755). Thus, while state sovereign immunity precludes an ALJ from adjudicating certain disputes between a *private* party and a state, the Executive Branch of the federal government retains "ample means" of ensuring that states comply with federal law. *Id.* at 768 (explaining that although sovereign immunity barred the Federal Maritime Commission from *adjudicating* a dispute between a private party and a state actor, sovereign immunity did not impact the agency's ability to *enforce* federal law against a state). A federal agency may, for example, "institute its own administrative proceeding against a state-run" entity. *Id.* Or the federal agency can eliminate any sovereign immunity bar by intervening in an action that would otherwise be precluded by state sovereign immunity. *See Mille Lacs Band,* 124 F.3d at 913; *CDEP,* 356 F.3d at 234-35*; RIDEM,* 304 F.3d at 53. In *Mille Lacs Band of Chippewa Indians v. Minnesota,* for instance, the Eighth Circuit concluded that sovereign immunity did not bar a suit that was originally initiated by a tribe against a state, because the United States intervened as a trustee and "fully participated in all proceedings on behalf of the [tribe]." 124 F.3d at 913.

Consistent with these principles, every case to have considered whether state sovereign immunity applies to a whistleblower proceeding before an ALJ in which OSHA is a party has affirmed that OSHA, by intervening in such a proceeding, removes any sovereign immunity bar

9

in a dispute solely between an employee and a state.  In *Connecticut Department of Environmental Protection v. OSHA* (*"CDEP"*), the plaintiff-state—like North Dakota—sought an expansive injunction "ordering OSHA to cease and desist," among other things, any further prosecution or adjudication of an employee's whistleblower claim under the Clean Air Act, Clean Water Act, and Solid Waste Disposal Act.  356 F.3d at 228, 230.  The Second Circuit held that a state's sovereign immunity "does not bar OSHA from intervening as a party in a [whistleblower] case originally brought by a private citizen against a nonconsenting state agency."  *Id*. at 234.  Relying on the Supreme Court's decision in *Ports*, the Second Circuit reasoned that "[w]hen the federal government becomes a party in an administrative adjudication, the adjudication is transformed from a prohibited suit by a private party against a state to a permitted one by the federal government against a state."  *Id*. (citing, *Ports*, 535 U.S. at 752); *see also id.* (further noting that "intervention of the United States as a party . . . render[s] permissible a suit that would otherwise be barred by the doctrine of sovereign immunity" (citing, *inter alia*, *Mille Lacs Band*, 124 F.3d at 912–14)).  Therefore, the Second Circuit concluded that the district court erred in granting an "overbroad" injunction that prevented OSHA from prosecuting the whistleblower claim in the administrative proceeding initiated by the employee.  *CDEP*, 356 F.3d at 234.

In *Rhode Island Department of Environmental Management v. United States ("RIDEM")*, the First Circuit likewise affirmed OSHA's authority to intervene in an administrative proceeding as a prosecuting party.  304 F.3d at 53-54.  Also relying on *Ports*, the First Circuit affirmed the district court's conclusion that the doctrine of sovereign immunity applied to whistleblower proceedings by private parties against a state agency under a statute analogous to the SDWA, the Solid Waste Disposal Act, 42 U.S.C. § 6971.  *RIDEM*, 304 F.3d at 53-54.  But the First Circuit stressed that its holding did "not preclude the Secretary [of Labor] from intervening in the enjoined proceedings and removing the sovereign immunity bar[.]"  *Id.*  The court remarked that "if the United States joins a suit after it has been initiated by otherwise-barred private parties and seeks the same relief as the private parties, this generally cures any Eleventh Amendment or sovereign immunity defect[.]"  *Id.* at 53 (citing *Seneca Nation of Indians v. New York*, 178 F.3d 95, 97 (2d

10

Cir.1999); *Mille Lacs Band*, 124 F.3d at 913; *Ohio EPA*, 121 F. Supp. 2d at 1167). The First Circuit thus noted that "[t]o the extent the district court's injunction does not permit the Secretary to take such action"—i.e., "intervening in the enjoined proceedings"—"we modify the injunction accordingly." *RIDEM*, 304 F.3d at 53-54.

District courts that have considered the issue have similarly concluded that the Department's participation in an employee-initiated whistleblower proceeding against a state employer removes any sovereign immunity bar. In *State of Ohio EPA v. Department of Labor*, the court determined that the plaintiff-state agency had sovereign immunity from an administrative proceeding filed by a private employee under several whistleblower statutes. 121 F. Supp. 2d at 1168. But the court opined that the Department could "proceed through the full administrative process" if "the agency determines that it will participate as a party in the action." *Id*. And in *Florida v. United States*, the court likewise concluded that state sovereign immunity applied to a whistleblower proceeding litigated by a private employee under several environmental statutes, including the SDWA. 133 F. Supp. 2d at 1290. But the court explained that "the Eleventh Amendment and constitutional sovereign immunity doctrine [would] pose no obstacle" if the Department elected "to go forward" with an administrative proceeding against a "sovereign state." *Id*.

North Dakota purports to find support for its claimed immunity in the above-discussed cases, but it fails to acknowledge that the district court decisions in *CDEP* and *RIDEM* were reversed or modified in part on appeal. *See* Compl. ¶ 29 (citing *CDEP v. OSHA*, 138 F. Supp. 2d 285 (D. Conn. 2001); *Florida v. United States*, 133 F. Supp. 2d 1280 (N.D. Fla. 2001); *State of Ohio EPA v. U.S. Dep't of Lab.*, 121 F. Supp. 2d 1155 (S.D. Ohio 2000); *RIDEM v. United States*, 115 F. Supp. 2d 269 (D.R.I. 2000)). In fact, all these cases—which comprise every case to address this issue—hold that sovereign immunity principles apply to whistleblower proceedings litigated by a *private individual* against a state, while making equally clear that sovereign immunity does not bar a whistleblower proceeding prosecuted by OSHA. Given OSHA's participation in the Seerup OALJ case as a prosecuting party, North Dakota's contention that the ALJ's adjudication

11

of the state agency's compliance with the SDWA infringes upon North Dakota's sovereign immunity is entirely without merit.  State sovereign immunity provides no basis for ordering Federal Defendants to "cease and desist" that proceeding or for declaring the proceeding unlawful. Compl. ¶¶ 43, 48.  North Dakota's claims challenging the proceeding before the ALJ should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**B.  North Dakota has no Immunity from OSHA Investigations.**

Likewise, North Dakota's claim that sovereign immunity barred OSHA from investigating Mr. Seerup's allegations in the first instance (or does so in the future) alternatively should be dismissed for failure to state a claim.  *See* Compl. ¶¶ 41, 45.  The principles of sovereign immunity apply to adjudications, not federal investigations of the kind OSHA conducted here.  An OSHA investigation into an alleged violation of a whistleblower statute such as the SDWA is an inquiry under the exclusive control of the Executive Branch agency.  *See* 42 U.S.C. § 300j-9(i)(2)(B) ("Upon receipt of a complaint . . . the Secretary shall conduct an investigation of the violation alleged in the complaint."); 29 C.F.R. §§ 24.103-104 (providing for the receipt and investigation of SDWA complaints by OSHA).[6]  As part of the investigation, OSHA may take actions necessary to determine whether a violation has occurred.  *See* 29 C.F.R. § 24.104.  Decisions regarding the scope of the investigation are left to the discretion of the agency; the complainant may not demand evidence at this stage of the process.  *See id.*  And after OSHA completes its investigation, OSHA may either notify the parties of a conclusion that a violation has not occurred or order "appropriate" relief if it has reasonable cause to believe the respondent violated the whistleblower statute.  *See id.* § 24.105(a).  An OSHA investigation is not, as North Dakota appears to suggest, a "forum" for the complainant to gather evidence to support his claim.  *See* Compl. ¶ 28.

The Supreme Court has made clear that agencies of the United States are free to conduct such investigations of states.  The Supreme Court stressed in *Ports* that although sovereign

---

[6] As noted above, the Secretary has delegated to OSHA the authority to receive and investigate whistleblower complaints under the SDWA.  *See* Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for Occupational Safety and Health, 85 Fed. Reg. 58,393 (Sept. 18, 2020).

immunity precluded the Federal Maritime Commission ALJ from adjudicating a claim by a private party against the state instrumentality, the Commission remained free "to investigate alleged violations of the [statute it administers] either upon its own initiative or upon information supplied by a private party"—one of the "ample means" by which the agency could ensure that states complied with federal law.  535 U.S. at 768 (citations omitted).  Applying or anticipating this reasoning from *Ports,* every case that has considered OSHA's authority to investigate alleged violations of federal whistleblower statutes by states—all of which are cited in North Dakota's complaint[7]—has affirmed that OSHA may so investigate.

In *CDEP*, the Second Circuit agreed with the Department that the district court erred when it ordered an injunction that "prevented OSHA from investigating [the complainant's] claim."  356 F.3d at 234.  "Based largely on [its] reading of *Ports*," *id.* at 230, the Second Circuit reasoned that OSHA's *investigation* was not analogous to an administrative *adjudication* of a private complaint brought solely by a private party against a state, which would be barred by sovereign immunity. *Id.* at 233.  In an investigation, the court noted, "[t]here is no neutral 'trier of fact,' . . . who is 'functionally comparable' to a trial judge."  *Id.* (quoting *Ports*, 535 U.S. at 756, 757).  And "[u]nlike an adjudication," where the parties "drive" the discovery of evidence, "in OSHA investigations, OSHA is in charge."  *Id*.  Thus, "OSHA did not violate Connecticut's sovereign immunity by engaging in a preliminary investigation."  *Id.* at 234.

The First Circuit reached the same conclusions regarding OSHA's authority to investigate violations of the whistleblower statutes in *RIDEM*, 304 F.3d at 54 n.13.  The First Circuit made clear that its holding barring employees from initiating whistleblower proceedings against a state

---

[7] As noted above, North Dakota fails to acknowledge in its complaint that the district court decisions in *CDEP* and *RIDEM* were modified on appeal, citing to only the district court decisions in these cases.  *See* Compl. ¶ 29.  With respect to OSHA's investigative authority, the Second Circuit clarified in *CDEP*—as discussed further below—that sovereign immunity does not bar OSHA from investigating an alleged whistleblower violation by a state.  *See CDEP*, 356 F.3d at 230.  And the First Circuit in *RIDEM* agreed with the district court that sovereign immunity had no bearing on OSHA's ability to investigate an alleged whistleblower violation by a state employer.  *See RIDEM*, 304 F.3d at 54 n.13.

agency did not preclude OSHA from "receiving complaints, conducting its own investigations on such complaints, and making determinations as to liability," agreeing with the district court that such actions by OSHA are distinguishable from an ALJ's adjudication of an employee's whistleblower claim. *Id*. And in *Florida*, the district court likewise concluded that although "sovereign immunity bars the commencement and prosecution of a federal administrative proceeding by a private individual against a state," "Congress clearly acted within its constitutional authority in adopting the whistleblower provisions, making them applicable to the states, and authorizing the Department of Labor to investigate violations, even by the states." 133 F. Supp. 2d at 1288-89; *see also State of Ohio EPA*, 121 F. Supp. 2d at 1166 (noting that the State of Ohio "readily concede[d] that no Eleventh Amendment issues are implicated with regard to" OSHA's "initial" investigation of a whistleblower complaint). Principles of sovereign immunity therefore provide no basis for precluding OSHA's (now-concluded) investigation of Mr. Seerup's allegations, and thus, this claim alternatively should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Finally, any suggestion from North Dakota that sovereign immunity either barred OSHA from receiving Mr. Seerup's whistleblower complaint or bars OSHA from receiving future complaints from Mr. Seerup is unavailing. *See* Compl. ¶¶ 43, 48 (alleging that it is entitled to a declaration that "allowing the filing … of the Seerup OSHA Case" violated its sovereign immunity and injunctive relief barring Mr. Seerup "from bringing any further complaints against [the state agency] before OSHA."). As the Supreme Court has explained, an Executive Branch federal agency is free "to investigate alleged violations of the [statute it administers] either upon its own initiative or *upon information supplied by a private party*." *Ports,* 535 U.S. at 768 (emphasis added). In affirming the Department's authority to investigate alleged whistleblower violations, the First Circuit thus made clear in *RIDEM* that sovereign immunity did not preclude OSHA from "receiving [employee] complaints" and "conducting its own investigations on such complaints." 304 F.3d at 54 n.13. Receipt of an employee complaint is an essential predicate to an OSHA investigation into whether an employer—public or private—has violated a whistleblower statute.

14

*See* 42 U.S.C. § 300j-9(i)(2)(B); 29 C.F.R. § 24.103.  North Dakota's attempt to bar state employees from filing whistleblower complaints with OSHA is both entirely unsupported by the caselaw and would undermine OSHA's ability to conduct lawful investigations of state employers.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case in its entirety.

Dated: April 10, 2025               Respectfully submitted,

                                    YAAKOV M. ROTH
                                    Acting Assistant Attorney General

                                    JACQUELINE COLEMAN SNEAD
                                    Assistant Branch Director

                                    /s/ Liam C. Holland
                                    LIAM C. HOLLAND
                                    Trial Attorney
                                    U.S. Department of Justice
                                    Civil Division, Federal Programs Branch
                                    1100 L Street, N.W.
                                    Washington, D.C. 20005
                                    Tel.: (202) 514-4964
                                    Fax: (202) 616-8470
                                    E-mail: Liam.C.Holland@usdoj.gov

                                    Sarah Kay Marcus, Deputy Associate Solicitor
                                    Erin Mohan, Senior Attorney
                                    James M. Morlath, Senior Attorney

                                    U.S. Department of Labor
                                    Office of the Solicitor
                                    200 Constitution Ave NW, N-2716
                                    Washington, DC 20210

                                    *Attorneys for Federal Defendants*

\

**CERTIFICATE OF SERVICE**

I certify that, on April 10, 2025, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to parties by operation of the Court's CM/ECF system. Parties may access this filing through the CM/ECF system.  I certify that I am e-mailing a copy of this filing to the *pro se* Defendant who may lack access to the Court's CM/ECF system.

> */s Liam C. Holland*
> LIAM C. HOLLAND